Entered on Docket
March 26, 2010
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

**Signed: March 26, 2010**

_____
**LESLIE TCHAIKOVSKY
U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

```
In re                                No. 06-41774 T
                                     Chapter 9
WEST CONTRA COSTA HEALTHCARE
DISTRICT, etc.,

     Debtor.
_____/
UECKER & ASSOCIATES, INC., as        A.P. No. 08-4242 AT
Trustee for the DOCTORS MEDICAL
CENTER TRUST FOR THE BENEFIT OF
CREDITORS,

     Plaintiff,

   vs.

TENET HEALTHSYSTEM HOSPITALS,
INC.,

     Defendant.
_____/
```

**MEMORANDUM OF DECISION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

In the above-captioned adversary proceeding, plaintiff Uecker & Associates, Inc., as trustee for the Doctor's Medical Center Trust for the Benefit of Creditors under a confirmed plan, (the "Trustee") seeks to avoid and recover certain lease payments made pre-petition

by the debtor (the "Debtor")[1] to defendant Tenet Healthsystem Hospitals, Inc. ("Tenet") and to object to its claim unless the payments are repaid.  The complaint is based on 11 U.S.C. § 548(a)(1)(B) which authorizes the avoidance of obligations that are constructively fraudulent: i.e., not made with actual intent to defraud but which have a fraudulent effect on other creditors because they are incurred when the debtor is insolvent or render the debtor insolvent.

Defendant filed a motion for summary judgment, contending that the Trustee was unable to establish a necessary element of the claim: i.e., that the Debtor was either insolvent when the obligation was incurred or was rendered insolvent by it.  The Trustee filed a cross-motion, contending that it was entitled to a summary adjudication in its favor on the issue of insolvency.  The motions were heard together on March 4, 2010 and taken under submission.  Thereafter, without leave, although seeking leave, the Trustee filed a post-hearing brief.  Tenet objected to the post-hearing brief but also addressed its contentions.

As set forth below, the Court concludes that Tenet is entitled to summary judgment in its favor.  The Court has considered both the post-hearing brief and Tenet's response in reaching its decision.

---

[1] The Debtor is West Contra Costa Healthcare District, a political subdivision of the State of California, doing business as Doctor's Medical Center.

2

**SUMMARY OF FACTS**

On or about March 2001, Tenet entered into a lease with Pinole Medical Development Co. ("Pinole") of a general acute care hospital and related facilities located in Pinole, California (the "Pinole Facility"). In August 2004, the Debtor entered into a sublease of the Pinole Facility from Tenet. The original sublease did not require the Debtor to pay monthly lease payments to Tenet. The original sublease was amended several times. The November 2004 and April 2005 amendments still did not require the Debtor to make lease payments. However, the third amendment, in May 2005, required the Debtor to make a lease payment for June 2005.

On July 1, 2005, the Debtor and Tenet entered into a new sublease agreement for the Pinole Facility (the "Sublease"). The Sublease required the Debtor to make monthly lease payments, beginning with a payment of $41,000 in July 2005, increasing each month thereafter to $83,333.33 in November 2005 and continuing at that rate thereafter through February 2021 unless the Sublease was terminated sooner. As part of the terms of the Sublease, the Debtor was required to provide Tenet with a letter of credit in the amount of $1.5 million upon which Tenet was permitted to draw if the Debtor failed to make the lease payments.

From July 1, 2005 through September 30, 2006, the Debtor paid Tenet $980,000 in lease payments. On October 1, 2006, the Debtor filed its chapter 9 petition, commencing the above-captioned case. On November 20, 2006, the Court authorized the Debtor to reject the Sublease. Tenet was authorized to draw on the letter of credit and

3

did so, receiving $1.5 million from the issuer of the letter of credit.

## DISCUSSION

**A. APPLICABLE LAW**

**1. Law Applicable to Summary Judgment Motions**

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure which is made applicable to this proceeding by rule 7056 of the Federal Rules of Bankruptcy Procedure. Rule 56 provides that summary judgment can and should be provided, either on all or a part of a claim, when the evidence provided demonstrates that there is no genuine issue as to any material fact. Fed.R.Civ.Proc. 56(c)(2). A disputed fact is material only if its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

An issue is genuine if the evidence makes it possible for the trier of fact to decide in favor of the non-moving party. Id. However, an inquiry into the materiality of a fact and its potential significance is not necessary where a party fails to establish the existence of an element essential to that party's claim. A moving party is entitled to summary judgment on a claim when the non-moving party, in opposition to the motion, fails to present evidence sufficient to support a finding in its favor on an essential element of its claim. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

4

### 2. Law Applicable to Avoidance of Constructively Fraudulent Transfers

Section 548 of the Bankruptcy Code provides, in pertinent part, that a trustee may avoid as fraudulent an obligation incurred by the debtor within two years of the debtor's filing for bankruptcy, as fraudulent if: "the debtor (i) received less than a reasonably equivalent value in exchange for...[the] obligation; and (ii)[I] was insolvent on the date that...such obligation was incurred, or became insolvent as a result of such...obligation[.]" 11 U.S.C. § 548(a)(1),(b)(i)-(ii). A debtor that is a municipality is "insolvent" if it is "(i) generally not paying its debts as they become due unless such debts are the subject of a bona fide dispute; or (ii) unable to pay its debts as they become due." 11 U.S.C. § 101(32)(C).

### B. ARGUMENT

The Trustee's complaint alleges that the Debtor was either insolvent when it entered into the Sublease or was rendered insolvent by doing so. However, the Trustee failed to present any evidence or argument to support her allegation that entering into the Sublease caused the Debtor to become insolvent. Therefore, the only issue the Court will address is whether the Debtor was insolvent when it entered into the Sublease.

As noted above, the Bankruptcy Code test for the insolvency of a municipality such as the Debtor has two prongs: (1) whether the debtor was generally paying its undisputed debts as they came due and (2) whether the debtor was able to pay its debts as they came due.

The relevant time for determining whether the Debtor was insolvent when it entered into the Sublease is July 1, 2005, just before the Sublease was executed. The relevant time for determining whether the Debtor was rendered insolvent by entering into the Sublease is prospective. It considers the Debtor's likely ability to pay its debts during the balance of the fiscal year-i.e., through the end of 2005. See In re City of Bridgeport, 129 B.R. 332, 336-38 (Bankr. D. Conn. 1991).[2]

### 1. The Debtor was generally paying is debts when it entered into the Sublease.

The Trustee's principal argument in support of its cross-motion was that the Debtor was not generally paying its debts as they came due in 2005. Her evidentiary support for this argument is seven proofs of claim filed in the bankruptcy case, reflecting debts incurred during 2005, which remained unpaid when the bankruptcy case was filed in October 2005. This evidence is insufficient as a matter of law to establish that the Debtor was not generally paying its debts as they came due as of July 1, 2005.

The Trustee concedes that many of the debts reflected in the seven proofs of claim were incurred after July 1, 2005. She has not provided a separate figure for those incurred up to July 1, 2005. However, even if all of the debts had been incurred before July 1,

---

[2] The issue of insolvency arose in the Bridgeport case as a question of eligibility to file a chapter 9 petition. It is arguable that this prospective view of a debtor's ability to pay should not be applied in a fraudulent transfer action. However, both parties have assumed that it should apply, and the Court concludes that its application does not change the outcome the decision.

6

2005, they would not be sufficient to establish insolvency at the time the Debtor entered into the Sublease.

The Debtor's financial records establish that its operating expenses in June 2005 were approximately $10 million and in July approximately $11 million. The Debtor's failure to pay $1.3 million of those expenses would not be sufficient to establish that the Debtor was "generally not paying its debts." Moreover, as Tenet points out, the Trustee has failed to offer any evidence that some or all of the debts were not being paid because they were disputed.

**2. The Debtor was able to pay its debts as they came due both before entering into the Sublease and during the balance of 2005.**

As noted above, the Debtor's ability to pay is examined prospectively, taking into account the balance of the Debtor's fiscal year. The Debtor's financial records clearly demonstrate that it was losing money every month and that its financial condition was deteriorating. However, Tenet notes that the Debtor's financial records demonstrate that, even at the end of December 2005, the Debtor's cash reserves exceeded the amount of its payables. Thus, according to Tenet, it was able to pay its debts by resorting to its cash reserves.

The Trustee argued that the cash reserves should not be taken into account because the Debtor would not have been exercising good business judgment if it had exhausted its cash reserves. Maybe so. However, the test for insolvency does not question whether the Debtor should have done so, simply whether it could have done so.

7

In her post-hearing brief, the Trustee argues that the Debtor's financial records demonstrated that, as of November 2005, the Debtor was unable to pay its debts. At that time, the total of the Debtor's cash and investments and market securities was only approximately $9 million whereas its total accounts payable and payroll related liabilities were approximately $9.5 million. The shortfall in December 2005 was even larger. Moreover, she notes, these figures do not include the Debtor's current liabilities, which she estimates exceeded $400,000 in November and December 2005. However, as Tenet responds, the Trustee ignores the approximately $10 million revenue stream that the Debtor received each month and used to pay its operating expenses. Thus, this argument is unpersuasive.

The Debtor's final piece of evidence is the declaration of Dev Mahadevan ("Mahadevan"), the Debtor's Chief Financial Officer. In his declaration, Mahadevan notes that, at a meeting of the Board of Directors on June 28, 2005, he advised the Board that, "if [the Debtor's] losses continued at the current rate, the District could exhaust its reserves in four months, by September 2005." As a result of this advice, the Trustee notes, the Debtor undertook extensive cost-cutting measures, including delaying payments to those vendors it believed were not critical or would not respond by discontinuing shipment of necessary supplies.[3]

---

[3] The delay in payment to vendors could have supported a finding that the Debtor was generally not paying its debts as they came due if evidence had been provided that the delays occurred before July 1, 2005 and involved the majority of the Debtor's current payables. However, given the timing and lack of specificity of the evidence presented, it does not.

8

A copy of the minutes from the meeting are attached to Mahadevan's declaration. The following statements appear immediately after the language quoted by the Trustee: "Administration has reviewed each department and has met nearly everyday to review opportunities for saving expenses. The goal is to reduce expenses by $50,000 per month and meet the original budget by the year-end."[4]

As discussed above, clearly, the Debtor was successful in reducing its expenses so as to pay its debts generally as they became due through the end of 2005 so as to avoid exhausting its cash reserves. By contrast, the City of Vallejo was found to be insolvent when it was unable to reduce its expenses without endangering the public health and safety. See In re City of Vallejo, 408 B.R. 280, 294 (Bankr. 9th Cir. 2009). Thus, the Court concludes that, even viewed prospectively, the Debtor had the ability to pay its debts as they came due.

**CONCLUSION**

Tenet's motion for summary judgment will be granted, and the Trustee's cross-motion for partial summary judgment will be denied. The Trustee has not presented any evidence nor has it argued that entering into the Sublease caused it to be insolvent. In addition, the Trustee has failed to present sufficient evidence to sustain a finding that either the Debtor was not generally paying its debts as they came due or that, viewed prospectively, it would be unable to

---

[4] The $50,000 reference in the minutes appears to be a typographical error. Mahadevan's declaration states that the goal was to reduce expenses by $500,000. This figure appears more plausible given the amount of the Debtor's monthly expenses.

9

pay its debts on a timely basis during the rest of 2005.  Since all of the other claims asserted in the complaint depend on the Trustee's success on her claim for avoidance of the obligation represented by the Sublease, Tenet is entitled to summary judgment on those claims as well.  Tenet is directed to submit a proposed form of order and judgment in accordance with this decision.

END OF DOCUMENT

COURT SERVICE LIST

Andrea T. Porter
Friedman Dumas and Springwater
150 Spear St. #1600
San Francisco, CA 94105

Ivan L. Kallick
Manatt, Phelps and Phillips
11355 W Olympic Blvd.
Los Angeles, CA 90064